IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LISA VANDERVELDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 18-cv-1333-NJR |
| v. | ) | |
| | ) | Related Cases: 19-cv-769-NJR |
| THE UNITED STATES OF AMERICA and | ) | 19-cv-746-NJR |
| SAINT LOUIS UNIVERSITY, | ) | |
| | ) | |
| Defendants. | | |

## **UNITED STATES OF AMERICA'S RESPONSE TO SAINT LOUIS UNIVERSITY'S MOTION TO STRIKE**

The United States of America, by and through its attorneys, Steven D. Weinhoeft, United States Attorney, and Suzanne M. Garrison, Assistant United States Attorney, responds to the motion to strike filed by St. Louis University ("SLU") (Doc. 90) as follows:

## **INTRODUCTION**

SLU moves to strike the affirmative and other defenses pled by the United States (Doc. 68, 69) in response to Plaintiff's Second Amended Complaint (Doc. 60) and SLU's Amended Crossclaim. (Doc. 63). Specifically, SLU maintains that the discretionary function exception to the Federal Tort Claims Act ("FTCA") found in 28 U.S.C. § 2680(a) is categorically unavailable to the United States in any case alleging medical malpractice and that the affirmative defense must be stricken as a matter of law. SLU also alleges that the United States has improperly asserted sovereign immunity both as a bar to suit and in response to SLU's claim for indemnification, and further that the United States has invoked an improper construction of the Illinois Contribution Act. SLU's motion should be denied as untimely and because SLU has failed to allege or demonstrate that it suffers any prejudice from the assertion of the affirmative defenses it seeks to strike.

If reviewed on the merits, the motion to strike should be denied because the record supports the defenses asserted. The United States permissibly pleads the affirmative discretionary function defense because one of the theories pled in this case seeks to hold the United States liable for the supervision of medical residents pursuant to longstanding contractual agreements between Scott Air Force Base ("SAFB"), SIHF Healthcare ("SIHF"), a federally qualified community health center enjoying FTCA coverage, and SLU. The decision by the United States to contract with SLU for the provision of medical residents and the resulting supervision of those residents as contemplated under that contract falls within the discretionary function exception. When the discretionary function exception applies, the FTCA's waiver of sovereign immunity is inapplicable. Another theory of liability pled in this case would seek to hold the United States legally responsible on an agency theory for the actions of the physician residents employed by SLU. There is no waiver of sovereign immunity which would extend liability to the United States based upon care provided by the physician residents-- individuals who were neither employees, deemed employees nor contractors of the United States. Accordingly, the United States has properly pled sovereign immunity as a defense. To the extent SLU moves to strike sovereign immunity as a defense to its request for indemnification, SLU fails to brief or develop the argument. In any event, there is no legal basis for SLU's crossclaim seeking indemnification, and even if there were, the claim is not properly before this Court. Finally, the United States has permissibly asserted the Illinois Contribution Act in response to SLU's Amended Crossclaim.

## SLU'S MOTION SHOULD BE DENIED AS UNTIMELY

Motions to strike affirmative defenses are made pursuant to Fed. R. Civ. P. 12 (f), which provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are due 21 days after being

served with the pleading. Fed. R. Civ. P. 12(f)(2). SLU moves to strike the affirmative defenses pled by the United States (Doc. 68, 69) in January 30, 2020, making its motion untimely and properly denied on this basis.

### THE MOTION SHOULD BE DENIED AS SLU HAS NOT ALLEGED THAT IT IS PREJUDICED BY THE ASSERTION OF THE DEFENSES

Motions to strike are generally disfavored and are often viewed as "time wasters." *Heller Financial Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). A district court has "considerable discretion" whether to strike defenses under Rule 12(f). *Delta Consulting Grp. Inc. v. R. Randle Constr., Inc*., 554 F.3d 1133, 1141 (7th Cir. 2009). A motion to strike will not be granted unless it appears "to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir.1991).

Few Seventh Circuit opinions discuss Rule 12, but district courts generally deny a Rule 12(f) motion unless the targeted language is clearly prejudicial to the movant. *Olayan v. Holder*, 833 F.Supp.2d 1052, 1058 (S.D.Ind.2011); *McDowell v. Morgan Stanley & Co., Inc*., 645 F.Supp.2d 690, 693 (N.D.Ill.2009); *YTB Travel Network of Ill., Inc. v. McGlaughlin*, No. 09–cv–JPG, 2010 WL 850154, at *2 (S.D.Ill. March 5, 2010)(denying motion to strike and noting that "Prejudice results. . . 'where the challenged allegation has the effect of confusing the issues or is so lengthy and complex that it places an undue burden on the responding party'"), cited in *Ford v. Psychopathic Records, Inc*., No. 12-CV-0603-MJR-DGW, 2013 WL 3353923, at *6 (S.D. Ill. July 3, 2013)(noting that, "District courts in this circuit do not generally grant a Rule 12(f) motion unless the targeted language is clearly prejudicial to the movant.") Here, in addition to the untimeliness of the motion, the failure of SLU to allege prejudice provides a basis for denying its

3

motion to strike. Reviewing the specific challenges to the defenses asserted on the merits, there is no basis striking the defenses as they are properly included in the answers to the second amended complaint and the amended crossclaim.

**THE CONTRACTUAL AGREEMENTS BETWEEN SLU AND THE UNITED STATES**

SLU acknowledges that the supervision of its physician residents by actual or deemed federal employees arose pursuant to a Training Affiliation Agreement ("TAA"). (Doc. 27, 27-1, 63; Att. 1). The entities who have entered into the TAA who are involved in this litigation are the 375th Medical Group, Scott Air Force Base ("SAFB"), SLU, and SIHF. (Att. 1 at 1). A second agreement, the Affiliation Agreement ("AA") between SLU and SIHF also sets forth the terms of the collaboration between those entities. (Att. 2). In examining the applicability of the discretionary function exception it is important to understand the considerations that prompted the signatories to the agreement to enter into it.

**375th Medical Group, Scott Air Force Base, United States Air Force**

SAFB is a military installation operated by the United States Air Force, an agency of the Department of Defense located in St. Clair County, Illinois. SAFB serves as a global mobility and transportation hub, and is home to several command and control elements that represent logistics for the Army, Navy, Air Force, Marines and Coast Guard. https://www.scott.af.mil/About-Us/Fact-Sheets/Display/Article/159786/scott-air-force-base[1] The 375th Medical Group supports the global mission of SAFB's host wing; trains 60 personnel annually through four specialty training programs; sustains the readiness skills of more than 850 active duty and Air Reserve Component personnel; and provides health services for more than 60,000 beneficiaries of the base community and 1,500 aeromedical patients. *Id.* The TAA details

---

[1] "A document posted on a government website is presumptively authentic if government sponsorship can be verified by visiting the website itself." *Qui Yun Chen v. Holder*, 715 F.3d 207, 212 (7th Cir. 2013).

4

the policy considerations which prompted the Air Force to enter into the agreement, explaining that:

> Since 1974, the Air Force has assigned military physicians as Family Medicine residents to the USAF [medical group]. At that time, full accreditation was granted by the Accreditation Council for Graduate Medical Education (ACGME). Elimination of inpatient beds at USAF [medical group] has resulted in the need to seek training in collaboration with another ACGME accredited program with a large sponsoring institution in order to meet ACGME accreditation standards. Based on mutually held educational goals and philosophy, the USAF [medical group] Commander and the University, recognizing the educational benefits of a cooperative program, desire to fully integrate the military Family Medicine residents currently being trained at the USAF MTF into the Saint Louis University School of Medicine, Family Medicine Residency Program. (Att. 1 at 1).

**SIHF**

SIHF is a not-for profit corporation that operates multiple community health care centers (also referred to as federally qualified health centers) in medically underserved areas, including the Belleville and O'Fallon facilities where Plaintiff received primary care. SIHF receives grant money from the Health Resources and Services Administration (HRSA) pursuant to 42 U.S.C. § 254(b). HRSA is an agency of the U.S. Department of Health and Human Services ("HHS") which is the primary federal agency for improving health care to people who are geographically isolated, economically or medically vulnerable. https://www.hrsa.gov/about/index.html. HRSA's health center program funds nearly 1,300 grantees to provide primary and preventive care at over 9,000 clinical sites that serve nearly 23 million patients regardless of their ability to pay[2]. As a not-for-profit private entity receiving federal grant monies, SIHF is deemed for FTCA coverage pursuant to 42 U.S.C. § 233(g). In furtherance of its mission to provide comprehensive primary and preventive care

---

[2] *HRSA Strategic Plan FY 2016-2018*, p. 13.
https://www.hrsa.gov/sites/default/files/hrsa/about/strategicplan/strategicplan.pdf

to individuals regardless of their ability to pay, SIHF entered into the TAA and the AA with SLU in order to "increase SIHF's clinical capacity and enhance the quality and accessibility of care." (Att. 2 at 1).

**THE FTCA'S LIMITED WAIVER OF SOVEREIGN IMMUNITY AND ITS EXTENSION TO COVER CLAIMS AGAINST FEDERALLY QUALIFIED COMMUNITY HEALTH CENTERS**

The United States as sovereign cannot be sued without its consent. *See United States v. Dalm*, 494 U.S. 596, 608 (1990). If the Government does waive its sovereign immunity, it alone dictates the terms and conditions on which it may be sued. *Macklin v. United States*, 300 F.3d 814, 820 (7th Cir. 2002). Federal Courts are presumptively without jurisdiction over civil actions, and the burden of establishing the contrary rests upon the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Here, because Plaintiff alleges that she received substandard medical care while a patient treated at SIHF, she invokes the FTCA and relies upon the conditions for suit set forth in the Federally Supported Health Centers Assistance Act of 1995 ("FSHCAA"), 42 U.S.C. § 233. Although the FTCA generally covers only employees of the federal government, under the FSHCAA, Public Law No. 102-501, and the amended FSHCAA, Public Law No. 104-73, 42 U.S.C. § 233(g)-(k), federally supported health centers, their employees, and certain contractors are deemed to be employees of the Public Health Service for the purpose of medical malpractice suits. 42 U.S.C. § 233(g)(1)(A). Once an individual is deemed an employee of the Public Health Service, the FSHCAA provides the exclusive remedy for alleged malpractice by such employee while acting within the scope of his employment. 42 U.S.C. § 233(a). In other words, under § 233, Congress has permitted a limited waiver of the sovereign immunity of the United States to cover certain entities and persons deemed employees of the Public Health

Service for claims "for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment…." 42 U.S.C. § 233(a). Under the FSHCAA, the limited waiver of sovereign immunity extends only to claims asserted against "any officer, governing board member, or employee of such an entity [i.e., a federally qualified health care center], and contractor of such an entity who is a physician or other licensed or certified health care practitioner…." 42 U.S.C. § 233(g)(1). Such claims are governed by and exclusively subject to the FTCA. 42 U.S.C. § 233(a). The United States does not dispute that Dr. Lucas-Foster was a deemed employee of the government[3], when Plaintiff received medical care at SIHF from January to July, 2017. Nor does the United States dispute that Dr. Culliney and Dr. Reineke-Piper, both officers in the United States Air Force assigned to the 375th Medical Group, were employees of the government[4] from January to July, 2017.

The United States' limited waiver of sovereign immunity does not extend to cover claims based on the alleged negligence of Dr. Jefferson, Dr. Kahn or Dr. Graham Foster (collectively referred to as "the resident physicians") as they were not actual or deemed employees of the United States nor were they contractors with the United States. The resident physicians were employed by SLU and were covered by medical malpractice insurance

---

[3] Dr. Lucas-Foster was an employee of SIHF. Once an individual is deemed an employee of the Public Health Service, the FSHCAA provides the exclusive remedy for alleged malpractice by such employee while acting within the scope of his employment. 42 U.S.C. § 233(a). Accordingly, as a deemed employee of the Public Health Service in connection with her employment by SIHF, the exclusive remedy for her alleged malpractice while acting within the scope of her employment is the FTCA.

[4] The FTCA waives sovereign immunity for personal injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

policies issued by a private insurer. (Att. 1 at 8). The resident physicians provided medical services to SIHF pursuant to the TAA and the AA entered between SLU, SAFB and SIHF. While *contractors* of a federally qualified community health center can be covered by the FTCA[5], the resident physicians cannot be considered contractors. Only individual physicians who contract with eligible federally qualified community health centers, not organizations or foundations who contract with eligible entities, can be considered contractors. *Dedrick v. Youngblood*, 200 F.3d 744, 746 (11th Cir. 2000) (requiring strict construction of the FSHCAA because "inclusion of contractor liability serves as an expanded waiver of sovereign immunity"), cited favorably in *Alexander v. Mount Sinai Hosp. Med. Ctr.*, 484 F.3d 889, 897 (7th Cir. 2007)(noting that physician should not have been deemed a contractor because the agreement with the federally qualified health care center was made not by the physician as an individual, but rather with a corporation the physician ran as its sole employee). *Carias-Garcia v. United States*, No. 1:12-CV-00337, 2016 WL 4679706, at *2 (N.D. Ind. Sept. 6, 2016)(because medical provider did not have a direct contractual relationship with the health center, he did not qualify as a contractor under the FSHCAA).

The United States cannot be held vicariously liable for the alleged malpractice committed by the resident physicians because it has not waived sovereign immunity on such a theory. *Goodman v. United States*, No. CV 3:16-5953, 2018 WL 3715740, at *6 (S.D.W. Va. Aug. 3, 2018), *reconsideration denied*, No. CV 3:16-5953, 2018 WL 3866497 (S.D.W. Va. Aug. 14, 2018)(granting the United States' motion to dismiss insofar as it related to claims of vicarious liability for the negligence of a resident physician who provided services at a

---

[5] "[A]ny officer, governing board member, or employee of [a public or non-profit private entity receiving federal funds], and any contractor of such an entity who is a physician or other licensed or certified health care practitioner" shall be deemed to be an employee of the Public Health Service. 42 U.S.C. § 233(g)(1)(A).

8

federally qualified health center pursuant to a contract entered into by her employing institution). The request that sovereign immunity be stricken as a defense should be denied.

## THE DISCRETIONARY FUNCTION EXCEPTION

In the TAA, the United States reserved the right to assert all available defenses. (Att. 1 at 7-9). The FTCA's waiver of sovereign immunity is limited by a number of exceptions, including the discretionary function exception. The exception is set forth at 28 U.S.C. § 2680(a), which states:

> The provisions of this chapter and section 1346(b) of this title shall not apply to—
>
> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statue or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. Varig Airlines*, 467 U.S. 797, 808 (1984). The purpose of the discretionary function was Congress' desire to "prevent judicial 'second-guessing' of legislative and administrative decisions ground in social, economic, and political policy through the medium of an action in tort." *Id.* at 814. Application of the discretionary function exception in a given case depends on two factors. The first factor required for application of the exception is that a discretionary act must be involved, or, in other words, the act or omission for which liability is sought to be imposed must involve "an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322 (1991). See also *Rothrock v. United States*, 62 F.3d 196, 198 (7th Cir. 1995). If, therefore, "a federal statute, regulation, or policy specifically

9

prescribes a course of action for an employee to follow," the discretionary function exception does not apply. *Gaubert,* 499 U.S. at 322.

Second, given that the exception "protects only governmental actions and decisions based on considerations of public policy," the challenged discretionary conduct must amount to a permissible exercise of policy judgment." *Berkovitz*, 486 U.S. at 537; *Gaubert*, 499 U.S. at 323. With respect to the policy requirement, applicability of the exception depends not on the intent of the government actor "but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325. Nor must the actor belong to the policymaking or planning ranks of government in order for the exception to apply; "[i]t is the nature of the conduct, rather than status of the actor, that governs whether the discretionary function applies in a given case." *Id*. at 325, quoting *Varig Airlines*, 467 U.S. at 813; see also *Gaubert,* 499 U.S. at 334, 111 S.Ct. at 1279. In short, "[w]hen established government policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id.* at 324, 111 S.Ct. at 1274.

The discretionary function exception is an affirmative defense to liability under the FTCA that the government must plead and prove. *Keller v. United States*, 771 F.3d 1021, 1023 (7th Cir. 2014) (citing *Parrott v. United States*, 536 F.3d 629, 634–35 (7th Cir. 2008); *Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008). The discretionary function exception applies without regard to whether the discretion involved was abused or the product of negligence. *Cassens v. St. Louis River Cruise Lines, Inc.*, 44 F.3d 508, 515 (7th Cir. 1995). The discretionary function exception is strictly construed in the United States' favor. *See U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992) ("Waivers of immunity must be strictly construed in favor of the sovereign

and not enlarged beyond what the language requires.") If the discretionary function exception applies, the FTCA's waiver of sovereign immunity is not available and suit is barred. *Maas v. United States*, 94 F.3d 291, 296 (7th Cir. 1996)

**Participation in the Training Agreements was a Discretionary Act**

The decision by SAFB and SIHF to contract with SLU for the provision of physician residents falls within the discretionary function exception. *Goodman,* 2018 WL 3715740, at *6 (ruling that the United States' decision to contract with a university for the provision of medical services by residents was discretionary, such that the United States could not be held liable for negligent supervision of the residents provided pursuant to that contract). As explained above, the discretionary exception does not apply if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. It logically follows that where the governmental actor or agency acts without such a prescription for its conduct, that action is generally discretionary in nature. There was no law or regulation that required SAFB or SIHF to incorporate medical residents into its practice. Nor were there any regulations or federal guidelines which dictate how physician residents are to be incorporated into a medical practice on those occasions when a federal agency or deemed federal actor exercises discretion to expand their ability to provide medical care to members of the armed forces, the poor, or the medically underserved[6]. Regulations pertaining to the staffing of community health centers are broadly-worded. 42 C.F.R. 51c.303. Centers are obliged simply to, "Provide sufficient staff, qualified by training and experience, to carry out the activities of the center." 42 C.F.R. 51c.303(p). SLU has not identified any mandatory statute, regulation or governmental policy which dictates how the

---

[6] Addition of physician residents to a clinic devoted to caring for the medically underserved and the poor greatly increases the capacity of a clinic to care for its patients. Residents are held to the same standard of care as physicians who have completed their residency in the same field of medicine. *Arpin v. United States*, 521 F.3d 769, 775 (7th Cir. 2008).

11

federal agencies or actors must carry out a plan to expand its medical services to the members of the public it serves. Accordingly, the United States' decision to enter into the TAA with SLU was discretionary in nature.

### Decisions Involving Considerations of Public Policy are Involved

Turning to the second factor, the TAA demonstrates that SAFB's decision to contract with SLU for the provision of services provided by physician residents was based on considerations of public policy. SAFB determined that "clinical experience is invaluable to training future Family Medicine providers in the US Air Force." (Att. 1 at 2). As for SIHF, the AA indicates that its participation in SLU's residency program would enable SIHF to increase its clinical care and to enhance the quality and accessibility of care which it provides pursuant to governmental grants designed to make primary and preventive medical care available to the poor, regardless of ability to pay. (Att. 2 at 1).

Where the decision to contract for services is policy-based it amounts to a discretionary function. *Alinsky v. United States*, 415 F.3d 639, 648 (7th Cir. 2005)(the government's decision to contract out air traffic control services was based on budgetary concerns, as well as a desire to reopen smaller air traffic control location and was a discretionary function). The United States' decision to contract with SLU for the provision of physician residents was discretionary, and the United States cannot be held liable for the negligent supervision of residents produced pursuant to that contract because such supervision is embodied in the decision to enter into the TAA and the AA in the first place. *See Goodman,* 2018 WL 3715740, at *7. SAFB and SIHF, acting in furtherance of the DoD and HHS, entered into the TAA to obtain additional physician resources in order to enhance capacity to provide care to service members and their families, the poor, and the medically underserved.

12

In support of its argument that the discretionary function exception cannot apply to any medical malpractice case, SLU cites three nonbinding, readily distinguishable cases, two from the First Circuit and one from the Ninth Circuit[7]. Both First Circuit cases involve care provided by the Veteran's Administration while the Ninth Circuit case pertains to emergency care rendered in a National Park. None of those cases involve the existence of any affiliation agreement with a medical residency program. Similarly, the string citation of cases on page 6 of SLU's motion involve only isolated instances of ministerial care not involving policy judgments or planning[8]. The decision to enter into the TAA and the AA was not a medical decision, unlike the mere treatment decisions involved in the cases cited by SLU. The supervision of the SLU residents by the United States stems from its decision to contract with SLU—a discretionary act based on an exercise of policy judgment. The supervision of SLU's physician residents within the context of the TAA and the AA, and in furtherance of the goals of those agreements, falls within the discretionary function exception and there is no waiver of sovereign immunity for claims related to negligent supervision of residents. Any supervision claims are properly dismissed for a lack of subject matter jurisdiction.

**THE CONTRIBUTION ACT IS PROPERLY INVOKED IN DEFENSE TO SLU'S CROSSCLAIM**

Plaintiff seeks to strike defense #5 from the United States' answer to its amended cross claim. The exact language pled by the United States is as follows:

> Drs. Imran Khan, Graham Foster, Stacy Jefferson and other resident physicians affiliated with St. Louis University were primarily responsible for Plaintiff's treatment at the Belleville Family Health Center. The Illinois right of contribution

---

[7] *Collazo v. United States*, 850 F.2d 1, 3 (1st Cir. 1988), *Magee v. United States*, 121 F.3d 1, 6 (1st Cir. 1997), and *Fang v. United States*, 140 F.3d 1238, 1241-42 (9th Cir. 1998), cited on page 5 of the motion.
[8] *Henderson v. Blumink*, 511 F.2d 399 (DC Cir. 1974) is no longer valid law in the aftermath of the Westfall Act, which accords federal employees absolute immunity from tort claims arising out of acts undertaken in the course of their official duties. 28 U.S.C. § 2679(b)(1).

among joint tortfeasors accordingly applies to eliminate or reduce any recovery against the United States. (Doc. 69 at 8).

In moving to strike the defense, SLU quotes only a portion of the language above and appears to take issue with the theory that under the Contribution Act, 740 ILCS 100/2, the United States could have no liability. The quoted language merely reflects that the right of contribution is based on relative culpability, such that the recovery against the United States could be reduced or eliminated. The quoted language also recognizes that if a defendant is not a tortfeasor vis-a-vis the original plaintiff, it cannot be a joint tortfeasor vis-a-vis a codefendant and may not be held liable to that codefendant for contribution. *Vroegh v. J & M Forklift*, 165 Ill. 2d 523, 529, 651 N.E.2d 121, 125 (1995). Residents are held to the same standard of care as physicians who have completed their residency in the same field of medicine. *Arpin v. United States*, 521 F.3d 769, 775 (7th Cir. 2008). Additionally, because the Illinois Contribution Act is not a waiver of federal sovereign immunity, if the United States is immune from Plaintiff's suit, SLU cannot recover under the Contribution Act. *See*, *Gostich v. Rock Island Integrated Servs.*, No. 07-4057, 2007 WL 3407177, at *2 (C.D. Ill. Nov. 14, 2007). Contrary to SLU's assertion, the United States has not invented a new legal concept. Its motion to strike reference to the Contribution Act should be denied.

## SLU OFFERS NO ARGUMENT IN SUPPORT OF ITS MOTION TO STRIKE THE ASSERTION OF SOVEREIGN IMMUNITY AS A BAR TO ITS INDEMNIFICATION CLAIM

In Count 5 of its Crossclaim, SLU cites the TAA for the proposition that the United States has contractually obligated itself to indemnify SLU for any professional liability claims against its residents. In defense to this claim, the United States asserts that, "This Court lacks subject-matter jurisdiction to hear any claim for indemnification against the United States because the United States has not waived its sovereign immunity. 28 U.S.C. § 1346." The United States additionally asserted that SLU's interpretation of the TAA is incorrect and that the agreement does not obligate

the United States to indemnify the medical residents. SLU's motion to strike the assertion of sovereign immunity as a bar to its indemnification request should be denied for failure to develop or discuss the argument in any meaningful way. In any event, district courts have not been granted jurisdiction to consider contractual indemnification claims against the United States with an amount in controversy in excess of $10,000. 28 U.S.C. § 1346(a)(2). The Tucker Act does serve as a waiver of sovereign immunity for contractual disputes with amounts in controversy exceeding $10,000, though the Court of Claims has exclusive jurisdiction[9]. 28 U.S.C. § 1491(a)(1).

## CONCLUSION

SLU's motion to strike may be denied as untimely or due to any failure to allege or establish that it is prejudiced by any of the defenses pled by the United States. Sovereign immunity is properly asserted as a bar to suit because the resident physicians whose care is at issue were not federal employees and cannot be deemed federal employees or contractors under the FTCA. The United States cannot be held liable for any malpractice committed by the resident physicians. The discretionary function exception to the FTCA bars recovery for any theory of liability based upon the supervision of the physician residents by their attending physicians. To the extent it seeks in excess of $10,000, SLU's indemnification claim is misfiled in this Court, and, in any event, it is based upon a misreading of the clear terms of the TAA.

WHEREFORE, the United States requests that SLU's motion to strike be denied.

Respectfully submitted,

STEVEN D. WEINHOEFT
United States Attorney

---

[9] There is no statutory provision allowing the government to remove cases directly to the Claims Court. See 28 U.S.C. § 1441 et seq. *Washington Hosp. Ctr. Corp. v. Waters*, No. CIV. A. 91-1638(GHR), 1992 WL 23746, at *4 (D.D.C. Jan. 21, 1992).

*/s/ Suzanne M. Garrison*
SUZANNE M. GARRISON
Assistant United States Attorney
United States Attorney's Office
Southern District of Illinois
Nine Executive Drive
Fairview Heights, Illinois 62208-1344
Phone: (618) 628-3770
Fax:     (618) 622-3810
Email: Suzanne.Garrison@usdoj.gov