IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LISA VANDERVELDEN,

        **Plaintiff,**

**v.**

SAINT LOUIS UNIVERSITY and
UNITED STATES OF AMERICA,

        **Defendants.**

Case No. 3:18-CV-1333-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court are the cross-motions for partial summary judgment filed by Defendants Saint Louis University ("SLU") and the United States of America ("USA"). (Docs. 114, 131). Plaintiff Lisa Vandervelden has joined in SLU's motion. For the reasons set forth below, the USA's motion is denied in part and denied as moot in part. SLU, and Vandervelden's motion is granted in part and denied as moot in part.

### BACKGROUND

This medical negligence case arises from the alleged delayed diagnosis of oral squamous cell carcinoma on Plaintiff Lisa Vandervelden's tongue. Between January and August 2017, Vandervelden received her primary care at a family practice clinic operated by Southern Illinois Healthcare Foundation, now known as SIHF Healthcare ("SIHF"). At SIHF, Vandervelden was examined by resident physicians employed by SLU but supervised and trained by SIHF and United States Air Force ("USAF") physicians.

SIHF and USAF physicians served as faculty and precepting physicians to the SLU

residents pursuant to a Training Affiliation Agreement ("TAA") between SLU, SIHF, and

Scott Air Force Base ("SAFB").[1]  (Doc. 131-2). The TAA states that elimination of inpatient

beds at the Air Force's 375th Medical Group resulted in the need to seek training for the

USAF's Family Medicine residents in collaboration with a program accredited by the

Accreditation Council for Graduate Medical Education ("ACGME"). (*Id.* at p. 1). It further

provides: "Based on mutually held educational goals and philosophy, the USAF MTF

Commander and the University, recognizing the educational benefits of a cooperative

program, desire to fully integrate the military Family Medicine residents currently being

trained at the USAF MTF into the Saint Louis University School of Medicine, Family

Medicine Residency Program." (*Id.*). As part of the agreement, SLU Family Medicine

residents would use the USAF and SIHF's clinical facilities for a portion of their clinical

experience, while USAF residents would use SLU and SIHF's clinical facilities for a

portion of their clinical experience. (*Id.* at pp. 1-2). Additionally, Air Force Family

Medicine Providers assigned to the Family Medicine Residency Program would be

"available for supervision of residents" at SLU's Family Medicine Center and SIHF, and

it was "understood that part of these official duties will include supervision of non-DoD

residents treating non-DoD patients that are not beneficiaries of the USAF Medical

Service." (*Id.* at p. 6).

In her Second Amended Complaint (Doc. 60), Vandervelden alleges Defendants,

among other things, negligently and carelessly failed to recognize, diagnose, and treat

---

[1] St. Elizabeth's Hospital was also a party to the TAA.

her oral cancer. She further alleges the USA negligently and carelessly supervised SLU's resident physicians. (*Id.*). As a result, her condition went undiagnosed and untreated, and it spread, causing permanent pain, disability, disfigurement, and loss of a normal life. (*Id.*). Because the USA is a defendant, jurisdiction is proper in this district court under the Federal Tort Claims Act ("FTCA"). 28 U.S.C. § 1346(b)(1); 28 U.S.C. § 2674.

The USA now moves for partial summary judgment, asserting that its decision to contract with SLU to create a family practice residency program falls within the discretionary function exception to the FTCA's waiver of sovereign immunity. SLU and Vandervelden also have moved for partial summary judgment, seeking to bar the USA's Affirmative Defenses Nos. 1, 3, 4, and 5 to SLU's Amended Crossclaim related to the discretionary function exception, indemnification, and the Illinois Contribution Act. (Doc. 114). Likewise, they move for partial summary judgment on the USA's Affirmative Defenses Nos. 1, 2, and 4 to Vandervelden's Second Amended Complaint on the same issues. (*Id.*).

## LEGAL STANDARD

Summary judgment is only appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting FED. R. CIV. P. 56(a)). Once the moving party sets forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 232-24 (1986).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[i]nferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted).

## I.      Discretionary Function Exception to the FTCA

The FTCA removes the sovereign immunity of the United States from suits in tort and gives federal district courts exclusive jurisdiction over claims against the United States for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission" of federal employees acting within the scope of their employment. *Levin v. United States*, 568 U.S. 503, 506 (2013) (quoting 28 U.S.C. § 1346(b)(1)); *see also Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008) (citing 28 U.S.C. § 1346(b)(1)). "Substantively, the FTCA makes the United States liable 'to the same extent as a private individual under like circumstances,' § 2674, under the law of the place where the tort occurred, § 1346(b)(1), subject to enumerated exceptions to the immunity waiver, §§ 2680(a)–(n)." *Id.* at 506-07.

Here, the USA asserts that the exception listed in § 2680(a), the "discretionary function exception," applies to Vandervelden's claim that the USA's attending physicians negligently supervised SLU residents. Under this exception, no liability shall lie for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or

perform a discretionary function or duty on the part of a federal agency or an employee

of the Government, whether or not the discretion involved be abused." *Berkovitz v. United*

*States*, 486 U.S. 531, 535 (1988) (quoting 28 U.S.C. § 2680(a)). The purpose of the exception

is to "prevent judicial 'second-guessing' of legislative and administrative decisions

grounded in social, economic, and political policy through the medium of an action in

tort." *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984).

"The discretionary-function exemption . . . has two components: first, the

assertedly wrongful conduct must entail an element of judgment or choice; second, that

discretion must be based on considerations of public policy." *Linder v. United States*, 937

F.3d 1087, 1089 (7th Cir. 2019), *cert. denied*, 141 S. Ct. 159, 207 L. Ed. 2d 1097 (2020). While

the exception is not limited to decisions made at the policy level, but rather extends to

decisions at the operational level that are in furtherance of the policy, the decision at issue

must still fall within the actor's realm of responsibility to qualify for the exception.

*Palay v. United States*, 349 F.3d 418, 429–30 (7th Cir. 2003) (citing *United States v. Gaubert*,

499 U.S. 315, 325 (1991)). That is, the action must be a matter of choice for the acting

employee. *Berkovitz*, 486 U.S. at 536. The discretionary function exception will not apply

if a statute, regulation, or policy dictates a course of action for an employee. *Id.* "[I]f the

employee's conduct cannot appropriately be the product of judgment or choice, then

there is no discretion in the conduct for the discretionary function exception to protect."

*Id.*

Even when the challenged conduct involves choice or judgment, a court must

determine whether it is the kind of judgment the exception was meant to shield. *Id.*

"[W]hen properly construed, the exception 'protects only governmental actions and decisions based on considerations of public policy.'" *Gaubert*, 499 U.S. at 323 (quoting *Berkovitz*, 486 U.S. at 537).

The USA asserts that while it waived sovereign immunity under the FTCA, its waiver is limited by the discretionary function exception. The USA argues that the decision by SAFB to contract with SLU to create a family medicine residency program was a discretionary action based on public policy. It then argues that its supervision of medical residents pursuant to that contract is also discretionary because "such supervision is inseparable from the decision to contract in the first place." The USA cites to an unpublished case from the Southern District of West Virginia to support its theory that the decision to contract with SLU was a discretionary decision that essentially makes every action taken under that contract subject to the discretionary function exception. *See Goodman v. United States*, No. CV 3:16-5953, 2018 WL 3715740, at *7 (S.D. W.Va. Aug. 3, 2018). In its response to SLU's motion for partial summary judgment, the USA also cites to *Collazo v. United States*, 550 F.2d 1, 2 (1st Cir. 1988), in which the court recognized that medical decisions could potentially fall within the discretionary function exception, but only to the extent they include social or policy considerations. The USA contends its physicians made public policy decisions that pertained to the training of personnel and the provision of patient care. Therefore, their supervision of SLU residents falls within the discretionary function exception, and the USA is immune from suit on Vandervelden's negligent supervision claim.

The Court is not convinced. As argued by both SLU and Vandervelden, even if the

decision to enter the residency program was discretionary, once that decision was made, the USA's attending physicians had no discretion to negligently supervise the medical residents. Rather, their actions were governed both by Illinois law, which provides the standard by which physicians must practice, and by the ACGME, which promulgates non-discretionary core requirements for every residency program in the United States. *See Berkovitz*, 486 U.S. at 536 (discretionary function exception does not apply if a statute, regulation, or policy dictates an employee's actions). Furthermore, although the USA contends that the degree to which a resident should be afforded independence is a decision requiring policy considerations, the USA has presented no evidence that its employees' actions as specifically alleged in this case were the product of any such public policy determinations.

In *Palay*, the Seventh Circuit referred to the Second Circuit's decision in *Coulthurst v. United States*, 214 F.3d 106, 109–11 (2d Cir. 2000), to illustrate the difference between policy choices and judgments not grounded in governmental policy. *Palay*, 349 F.3d at 429. In *Coulthurst*, a prisoner was injured when a cable on a weightlifting machine snapped. 214 F.3d at 109. He filed suit contending that prison officials had been negligent in inspecting and maintaining the equipment. *Id.*

The Second Circuit noted there were potentially two types of negligence at issue: negligence in the design of an inspection program for the equipment, and negligence in the actual inspection of the equipment. *Id.* The first type of negligence likely involved matters of public policy, including balancing safety considerations with economic considerations. Thus, it would be protected by the discretionary function exception. *Id.*

On the other hand, an inspector's failure to properly inspect the equipment pursuant to an inspection program is a different type of negligence that involves neither judgment nor choice, nor is it grounded in considerations of governmental policy. *Id.* "For example, the official assigned to inspect the machine may in laziness or haste have failed to do the inspection . . . the official may have been distracted or inattentive, and thus failed to notice the frayed cable; or he may have seen the frayed cable but been too lazy to make the repairs or deal with the paperwork involved in reporting the damage." *Id.* These acts, while clearly negligent, do not involve an element of judgment or choice within the meaning of *Gaubert*. *Id.*

Here, the decision to create the residency program itself was a choice grounded in public policy and is therefore protected by the discretionary function exception. But the practice of medicine by the USA's employees does not involve the same type of discretion that is exempt from liability. *See Surratt v. United States*, 582 F. Supp. 692, 700 (N.D. Ill. 1984) ("[M]edical decisions by government doctors providing medical care are not considered the exercise of a discretionary function within the meaning of the statute."). Whether the USA's physicians were negligent in implementing the ACGME family practice guidelines and supervising SLU's residents is a question of fact for the jury.

For these reasons, the Court finds that the discretionary function exception does not provide the USA with immunity as to Vandervelden's claim that the USA's physicians negligently supervised SLU residents. Thus, the USA is not entitled to partial summary judgment. Conversely, SLU and Vandervelden are entitled to summary judgment on the USA's Affirmative Defense No. 1 to SLU's Amended Crossclaim

(Doc. 69) and Vandervelden's Second Amended Complaint (Doc. 68).

## II.     Illinois Contribution Act

SLU and Vandervelden also seek summary judgment on the USA's Affirmative

Defense No. 5 to the Second Amended Complaint and No. 4 to SLU's Amended

Crossclaim. That defense states:

> Drs. Imran Khan, Graham Foster, Stacy Jefferson and other resident physicians affiliated with St. Louis University were primarily responsible for Plaintiff's treatment at the Belleville Family Health Center. The Illinois right of contribution among joint tortfeasors accordingly applies to eliminate or reduce any recovery against the United States.

(Doc. 68 at p. 6; Doc. 69 at p. 8).

SLU and Vandervelden specifically take issue with the word "eliminate," as the

Illinois Joint Tortfeasor Contribution Act, 740 ILL. COMP. STAT. § 100/2, calls for

apportionment of liability based on relative culpability. Thus, the Contribution Act could

not serve to "eliminate" any recovery against the United States merely because another

party is "primarily responsible" for plaintiff's injury. In response, the USA asserts it was

merely stating that the right of contribution is based on relative culpability, such that the

recovery against the United States could be reduced or even eliminated if the USA is not

found to be a tortfeasor or is found to be immune from suit.

It is true that "primary responsibility" by SLU cannot serve to "eliminate" any

recovery from the USA under the Illinois Joint Tortfeasor Contribution Act. Yet the

second sentence of the defense is not inaccurate; if the USA is found not to be a

tortfeasor—or if it were to settle with Vandervelden—it would be discharged from any

contribution liability to SLU under the Act. *See Antonicelli v. Rodriguez*, 104 N.E.3d 1211,

1216 (Ill. 2018) (A settling joint tortfeasor who settles in good faith with the injured party is discharged from contribution liability . . . ."). Thus, the Court will not strike Affirmative Defense No. 5 to the Second Amended Complaint and No. 4 to SLU's Amended Crossclaim.

### III.    Vicarious Liability and Indemnification

Finally, the USA moves for summary judgment to the extent Vandervelden seeks to hold it vicariously liable for the actions of SLU residents. In response, Vandervelden states she did not plead vicarious liability and instead asserts the USA has direct liability due to its own physicians' negligence. Thus, this portion of the USA's motion is denied as moot. Likewise, the motion for summary judgment on the USA's Affirmative Defense No. 2 to Vandervelden's Second Amended Complaint and Affirmative Defense No. 4 to SLU's Crossclaim is denied as moot.

As to SLU's motion for summary judgment on Affirmative Defense No. 3 to its Crossclaim, the Court has severed SLU's claim for indemnification and transferred it to the Court of Federal Claims pursuant to 28 U.S.C. § 1631. (Doc. 155). Thus, SLU's motion is also denied as moot as to Affirmative Defense No. 3 to SLU's Crossclaim.

CONCLUSION

For these reasons, the Motion for Partial Summary Judgment filed by the United States of America (Doc. 131) is **DENIED in part and DENIED as moot in part**.

The Motion for Partial Summary Judgment filed by Saint Louis University and joined by Vandervelden (Doc. 114) is **GRANTED in part and DENIED as moot in part**. Affirmative Defense No. 1 to the Second Amended Complaint and SLU's Crossclaim is

Page 10 of 11

STRICKEN.

IT IS SO ORDERED.

DATED:   December 20, 2021

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**