IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LISA VANDERVELDEN, | |
| Plaintiff, | |
| v. | Case No. 3:18-CV-1333-NJR |
| SAINT LOUIS UNIVERSITY and UNITED STATES OF AMERICA, | |
| Defendants. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court are *Daubert* motions and motions *in limine* filed by Defendants Saint Louis University ("SLU") and the United States of America ("USA"). (Docs. 125-129, 133-134). SLU also has filed a motion for summary judgment based on its *Daubert* motion. (Doc. 130). SLU asks the Court to exclude the opinions and testimony of the USA's retained expert Dr. Barbara Murphy (Doc. 125), and both SLU and the USA ask the Court to exclude the opinions and testimony of Plaintiff Lisa Vandervelden's retained expert Dr. Krzysztof Misiukiewicz (Docs. 126, 133).

FACTUAL BACKGROUND

On January 23, 2017, Plaintiff Lisa Vandervelden went to a federal health center complaining of a blister under her tongue and facial swelling, which had been present for two weeks. (Doc. 125-4 at p. 6). A physical exam, documented by a SLU resident (supervised by a USA physician), showed an ulcer under her tongue where the lingual frenulum and tongue join. (*Id.*). Vandervelden was prescribed mouth wash, instructed to

Page 1 of 15

return if her symptoms persisted, and advised to follow up with a dental hygienist. (*Id.*).

Vandervelden did not see a dental hygienist as recommended, but she returned to the federal health clinic—for a follow up concerning her oral ulcer and a wound on her arm—on February 24, 2017. (*Id.*). On exam, a SLU resident found Vandervelden had an aphthous ulcer (a canker sore) on the left base of her tongue, and she was advised to continue using the mouth wash and oral lidocaine for pain. (*Id.*) She also was instructed to return if her oral lesion worsened or increased in size. (*Id.*). Vandervelden had an annual well visit scheduled at the health clinic for March 3, 2017, but she canceled the appointment. (Doc. 125-1 at p. 2).

Four months passed before Vandervelden returned to the federal health clinic to follow up on her oral ulcer. (Doc. 126-6 at p. 2). She reported no improvement despite antibiotics and pain medication. (*Id.*). A physical exam by a SLU resident demonstrated "no obvious wound" but noted the ulcer was "very tender to palp at base of left side of tongue. No indurations, masses or flactance. No bleeding gums or abscess teeth noted." (*Id.*). Vandervelden was referred to an oral surgeon for evaluation, but when the doctor was advised that no oral surgeon accepted Vandervelden's insurance, the doctor advised her to see a dentist. (*Id.*).

Less than a week later, on June 29, 2017, Vandervelden presented at the Emergency Department at Memorial Hospital complaining of left-sided throat swelling and pain for three months. A CT scan was performed, and a "14 x 8 mm low-attenuation, rim-enhancing collection along the left tongue base with surrounding inflammatory thickening/stranding" was found to be evidence of an abscess, although malignancy

Page 2 of 15

could not be excluded. (Doc. 125-6 at p. 1). Vandervelden was advised to schedule an appointment with Dr. George, an otolaryngologist ("ENT"), but she did not do so. (*Id.*). The following day, Vandervelden saw her primary care physician, a SLU resident at the health center, for a follow-up visit. (Doc. 125-1 at p. 4). Vandervelden reported no improvement in symptoms with antibiotics. (*Id.*) The doctor reviewed the CT scan results and referred her to an ENT at SLU. (*Id.*). An appointment with the ENT was scheduled for September 2017. (*Id.*).

By July 31, 2017, Vandervelden had lost 20 pounds, and she was experiencing worsening pain. An exam by her primary care physician revealed an ulcer on the base of her tongue about one cm in diameter. (*Id.*). The doctor contacted an ENT at Washington University in St. Louis to facilitate an earlier ENT appointment. (*Id.*).

On August 7, 2017, a doctor at Washington University reviewed the CT scan performed on June 29, 2017, and found an "enhancing mass at the left aspect of the tongue extending into the floor of the mouth measuring 3.3 x 1.8 centimeters." (Doc. 125-7 at p. 1). Two days later, a Washington University doctor examined Vandervelden and noted her six-month history of oral pain, odynophagia, otalgia, difficulty swallowing, and weight loss. The doctor found "a close to 4 cm tongue lesion that has a relatively submucosal area close to 12 mm of depth. It does not go all the way to the midline." (Doc. 125-8 at p. 1). He found that it involved some portion of the tongue base as well. (*Id.* at p. 2). Given his high suspicion of carcinoma, the Washington University doctor performed a biopsy, which confirmed invasive, mildly differentiated squamous cell carcinoma, keratinizing type. (Doc. 126-7 at p. 3). Vandervelden was clinically staged as

a "T3N0M0." Surgery was recommended, followed by radiation therapy. (*Id.* at p. 5).

Surgeons removed the mass on August 22, 2017. (Doc. 126-8 at p. 1). The surgeon found a "very large tumor, measuring approximately 8 to 9 cm." (*Id.*). The tumor "appeared to be arising from the left oral tongue with extension into the left floor of mouth" and crossed the midline into the right base of the tongue, as well as into the floor of the mouth. (*Id.* at pp. 1-2). Her stage was determined to be T4N0M0. (Doc. 140-2 at p. 4). A total glossectomy was performed, meaning Vandervelden's entire tongue was removed. (*Id.* at p. 2). She then underwent adjuvant radiation and, later, a tongue reconstruction procedure. (Doc. 126-2 at p. 5).

## LEGAL STANDARD

"A district court's decision to exclude expert testimony is governed by Federal Rules of Evidence 702 and 703, as construed by the Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)." *Brown v. Burlington Northern Santa Fe Ry. Co.*, 765 F.3d 765, 771 (7th Cir. 2014); *see also Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). The *Daubert* standard applies to all expert testimony, whether based on scientific competence or other specialized or technical expertise. *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S.137, 141 (1999)).

Federal Rule of Evidence 702 provides that expert testimony is admissible if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Under this rule, an expert witness may testify about a scientific issue in contention if the testimony is based on sufficient data and is the product of a reliable methodology correctly applied to the facts of the case. *Lyons v. United States*, No. 120-CV-01120-JMS-DLP, 2021 WL 3076482, at *1 (S.D. Ind. July 21, 2021) (citing *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010)).

The district court is the gatekeeper with respect to the screening of expert testimony in ensuring it is both relevant and sufficiently reliable. *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015). The district court "must engage in a three-step analysis before admitting expert testimony." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017). The Court must determine whether: (1) the witness is qualified; (2) the expert's methodology is scientifically reliable; and (3) the testimony will assist the trier of fact in understanding the evidence or determining a fact in issue. *Id.*

The "key to the gate is not the ultimate correctness of the expert's conclusions. Instead, it is the soundness and care with which the expert arrived at her opinion; the inquiry must 'focus . . . solely on principles and methodology, not on the conclusions they generate.'" *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013) (citing *Daubert*, 509 U.S. at 595). "So long as the principles and methodology reflect reliable scientific practice, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Daubert*, 509 U.S. at 596).

Finally, an expert must explain the methodologies and principles that support his or her opinion; he or she cannot simply assert a "bottom line" or *ipse dixit* conclusion.

*Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (quoting *Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010)). "[W]here such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592). The district court possesses "great latitude in determining not only *how* to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009) (citing *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007)). "The critical inquiry is whether there is a connection between the data employed and the opinion offered." *Gopalratnam*, 877 F.3d at 781 (quotation omitted).

## DISCUSSION

I. **SLU's *Daubert* Motion and Motion *in Limine* to Exclude the Opinions of Dr. Barbara Murphy (Docs. 125, 128)**

USA expert Dr. Barbara Murphy is a physician licensed to practice in Tennessee and board certified in Medical Oncology. (Doc. 125-1). She is an attending physician in the Division of Hematology and Oncology at Vanderbilt University Medical Center. (*Id.*). Since 1993, Dr. Murphy has served in various capacities in the head and neck cancer program at the Vanderbilt Ingram Cancer Center, including Leader of the Head and Neck Clinical Team, Leader of the Head and Neck Cancer Research Team, and Director of the Head and Neck Supportive Care Program. (*Id.*).

SLU moves to bar the following opinions provided by Dr. Murphy, arguing the

opinions fail to meet the standard for admissibility required by Federal Rule of Evidence 702 and *Daubert* because her methodology is invalid:

- in June 2017, Vandervelden's cancer would have been at Stage 1 or 2;

- her oral squamous cell carcinoma "exploded" in size in July 2017 and "exploded" in size in August 2017;

- the tumor grew very rapidly between the end of June and August;

- "had the patient followed up with ENT in June as directed, earlier treatment at this time may possibly have been initiated, which may possibly have resulted in avoiding a total glossectomy..." and that a diagnosis in June would have given her a better chance to have avoided a total glossectomy; and

- a work-up in June or July would have possibly given her a better chance for a better outcome.

### A.  Opinions Regarding Tumor Growth Rate and Staging

With regard to Dr. Murphy's opinions about the tumor growth rate between June and August 2017, SLU argues that Dr. Murphy was merely "guesstimating" and, thus, her opinions are unreliable. SLU also asserts Dr. Murphy based her opinions on an invalid methodology, which involved stringing together disparate clinical and imaging data with the surgical data from Vandervelden's glossectomy. SLU claims this methodology is not recognized science and cannot support Dr. Murphy's opinions to a reasonable degree of medical certainty. SLU then uses its own experts' observations that no standard growth rate of an oral tongue cancer has ever been established, tested, or subjected to peer review; thus, it is impossible to know when the oral tongue cancer was present or to retrospectively stage the tumor. And, SLU argues, the data between January and August 2017 itself is unreliable for establishing tumor size and growth.

In response, the USA submits that Dr. Murphy's specialized training and experience in the field of head and neck cancer provide a sufficient basis for her opinions under *Daubert*. (Doc. 149). The USA argues Dr. Murphy reached her opinions by taking facts about Vandervelden's condition and applying her experience and research in the field to make observations about Vandervelden's tumor, its rarity, its aggressiveness, its manifestation, and its size upon removal as contrasted with clinical observations and imaging in the weeks before it was removed.

Upon reviewing the evidence, the Court disagrees with SLU's assessment of Dr. Murphy's methodology. Dr. Murphy reviewed Vandervelden's medical records, depositions of the treating physicians, imaging studies, the surgical report, PET scan, pathology report, and other records, and she applied her experience and research in the field in reaching her conclusions. This is a sound methodology. *See Walker v. Soo Line R. Co.*, 208 F.3d 581, 591 (7th Cir. 2000) (finding expert's testimony admissible when he applied his experience to the medical records). While SLU's experts disagree with Dr. Murphy, "[t]hat two different experts reach opposing conclusions from the same information does not render their opinions inadmissible." *Id.* at 589. Dr. Murphy's methodology is reliable, and SLU can challenge her opinions on cross-examination.

SLU further argues Dr. Murphy's opinion about the tumor growth rate is based on a misreading of the medical records. SLU contends that Dr. Murphy believed the tumor was 14 x 8 mm based on her reading of the June 29, 2017 CT scan, when the radiology report actually showed a 14 x 8 mm "rim enhancing collection" thought to be an abscess. When doctors at Washington University re-read the June 29, 2017 CT scan,

they found a mass measuring 3.3 x 1.8 cm—more than double in size. Because Dr. Murphy based her opinion regarding tumor grown rate on an incorrect measurement of the tumor, SLU argues, it must be excluded.

This argument goes to the weight, not the admissibility, of Dr. Murphy's opinion. SLU's claim that Dr. Murphy based her tumor staging on an incorrect reading of the June 29, 2017 CT scan can be explored on cross-examination. *See Schwarz v. Nat'l Van Lines*, No. 03 C 7096, 2005 WL 8177605, at *1 (N.D. Ill. Sept. 22, 2005) (holding that expert's miscalculation went to the weight, not admissibility, of his testimony); *Traharne v. Wayne Scott Fetzer Co.*, 156 F. Supp. 2d 717, 723 (N.D. Ill. 2001) ("[f]actual inaccuracies [in an expert opinion] are to be explored through cross-examination and go toward the weight and credibility of the evidence not admissibility"); *Schultz*, 721 F.3d at 431 (noting the court is not concerned with the ultimate correctness of the expert's opinion as long as the methodology is sound). The Court further notes that Dr. Murphy did not testify that the tumor "exploded" in size both in July 2017 and August 2017. Dr. Murphy clearly corrected herself when she testified: "I think it became evident in June, and I think it exploded in July. . . . I mean, not July. In August." (Doc. 125-2 at p. 7). Thus, Dr. Murphy's opinion regarding the tumor growth rate will be allowed.

### B. Opinions Regarding Chance of a Better Outcome

SLU next challenges Dr. Murphy's opinion that had Vandervelden followed up with an ENT in June 2017 as directed, earlier treatment may *possibly* have been initiated, which may *possibly* have resulted in avoiding a total glossectomy. SLU argues that causation must be proven to a reasonable degree of medical certainty, and a causal

connection cannot be made by testimony that an outcome is "possible." Because Dr. Murphy admitted in her deposition that she could not make this statement to a reasonable degree of medical certainty, the Court agrees this opinion should be excluded. *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (expert testimony may not be based on subjective belief or speculation). Accordingly, Dr. Murphy's opinion that had Vandervelden followed up with an ENT in June as directed, she may possibly have avoided a total glossectomy, as well as her opinion that a work-up in June or July 2017 would possibly have given her a better chance for a better outcome, will be excluded.

Finally, SLU asserts Dr. Murphy's opinions should be excluded under Rule 403 because they are merely guesses that would mislead the jury as to fault and the amount of damages, if any. Therefore, the probative value of her opinions is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. The undersigned disagrees that Dr. Murphy's opinions are merely guesses, but reserves ruling on any objections under Rule 403 until trial.

**II.     SLU and the USA's *Daubert* Motions and SLU's Motion *in Limine* to Exclude Testimony of Plaintiff's Retained Expert Dr. Krzysztof Misiukiewicz (Docs. 126, 129, 133)**

Dr. Krzystof Misiukiewicz is a physician licensed in New York and board certified in Medical Oncology. (Doc. 133-2). Dr. Misiukiewicz is active in clinical practice and treats patients with solid tumors in the head and neck at Mount Sinai Hospital, where he also is an associate professor. (Doc. 133-1 at p. 3).

Both SLU and the USA ask the Court to exclude the following opinions of Dr. Misiukiewicz:

- an earlier diagnosis of oral squamous cell carcinoma would have allowed Vandervelden to avoid radiation therapy and her related complications of xerostomia and osteoradionecrosis;

- if Vandervelden had a pathologically detectable tumor in February 2017, it would have been subject to definitive staging at stage T1; and

- the failure to diagnose Vandervelden earlier reduced her survival rate.

Additionally, the USA seeks to exclude Dr. Misiukiewicz's opinion that the oral lesions Vandervelden presented with on January 23, 2017, and February 24, 2017, were the same lesion, as well as any testimony by Dr. Misiukiewicz regarding the standard of care for supervising residents.

### A. Causation Opinions

Defendants argue that Dr. Misiukiewicz's causation opinions are unsupported speculation and that his "methodology" consists solely of selectively reviewing medical records and clinical notes, offering contrary assumptions, and formulating conclusions that are devoid of any factual and scientific support. Defendants note that Dr. Misiukiewicz does not explain why he believes the aphthous ulcer found in February 2017 was oral cancer when no oral lesions were visible in June 2017. Moreover, there is no standard grown rate for tongue cancer, so his opinion that the cancer was stage I in February 2017 is merely a guess. Because the information needed to determine stage, "including pathologic confirmation of the disease," does not exist, Defendants argue, Dr. Misiukiewicz's opinion regarding Vandervelden's prognosis is invalid. Finally, as to the reduction of Vandervelden's survival rate, the USA notes that Dr. Misiukiewicz's opinion assumes that stage I oral squamous cell carcinoma was present in February 2017,

but that Dr. Misiukiewicz does not base his opinion upon Vandervelden's own individual circumstances.

In response, Vandervelden again points out the paradox in Defendants' argument that the only acceptable method for diagnosing and staging oral cancer is via pathological confirmation of the disease—*i.e.*, a biopsy—yet, Defendants are the ones who failed to perform or order a biopsy in January or February 2017. While Defendants claim Dr. Misiukiewicz did not employ a reliable *methodology*, what they are really saying is he lacked the *data* to accurately determine the cancer's stage in February 2017.

As with Dr. Murphy, the Court finds Dr. Misiukiewicz's causation opinions are based on a sufficiently reliable methodology, and they will assist the trier of fact with analyzing the issues in this case. Dr. Misiukiewicz developed his opinions by reviewing Vandervelden's medical records, clinical notes, and imaging, and he applied his medical knowledge and experience to those records. Thus, there is a connection between the available data and Dr. Misiukiewicz's opinions. *See Hall v. Flannery*, 840 F.3d 922, 928 (7th Cir. 2016) (expert's opinions were based on sufficiently reliable methodology when he based his conclusions on medical records, CT scans, medical notes, and deposition testimony); *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) ("An expert's testimony is not unreliable simply because it is founded on his experience rather than on data; indeed, Rule 702 allows a witness to be "qualified as an expert by knowledge, skill, *experience*, training, or education.").

As noted by Vandervelden, whether the information in the medical records is sufficient to support Dr. Misiukiewicz's opinions is a matter to be determined by the trier

of fact, and Defendants can question the accuracy of those opinions on cross-examination. Thus, Dr. Misiukiewicz's testimony regarding Vandervelden's oral lesions in January and February 2017, the stage of Vandervelden's tumor in February 2017, and her reduced survival rate will be permitted.

### B. Opinions Regarding Treatment Options

Both Defendants argue next that Dr. Misiukiewicz is unqualified to render an opinion about Vandervelden's treatment options when he is not an otolaryngologist, radiation oncologist, or a surgeon.

The Court rejects this notion. While a doctor's medical degree does not make him qualified to opine on all medical subjects, the doctor need not be a specialist in a given field as long as he has the knowledge, training, and education to reach his conclusions. *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010). Dr. Misiukiewicz is a board-certified oncologist and associate professor at Mount Sinai, where he treats head and neck cancer patients. Dr. Misiukiewicz testified that his patients with head and neck cancer are treated in a multidisciplinary fashion, so even though he does not perform radiation therapy, he must be familiar with all treatments. (Doc. 126-13 at p. 2). The Court finds Dr. Misiukiewicz's experience undoubtedly gives him an adequate foundation to testify as to Vandervelden's treatment options, particularly considering his familiarity with radiation therapy and its side effects on his own patients.

### C. Testimony Regarding Supervision of Residents

Finally, the USA seeks to exclude any testimony by Dr. Misiukiewicz regarding the education, training, and supervision of residents under Federal Rule of Evidence 403

when he confessed to lacking familiarity as to how family practice residents are supervised, does not consider himself well versed in the Accreditation Council for Graduate Medical Education ("ACGME") guidelines, and has not reviewed the SLU residency program manual.

SLU separately responded to the USA's contention that Dr. Misiukiewicz should be barred from testifying about residency programs and maintains that Rule 702 allows an expert to be qualified on the basis of experience. SLU maintains that because Dr. Misiukiewicz is an associate professor who oversees a residency program and supervises residents, he is qualified to opine on how residency programs operate. The Court generally agrees and finds that Dr. Misiukiewicz is qualified to offer his opinions on the standard of care expected of residents. The Court reserves ruling, however, on the USA's motion with regard to any objections raised at trial under Federal Rule of Evidence 403.

## Conclusion

For these reasons, Saint Louis University's *Daubert* motion and motion *in limine* to exclude the testimony of the United States of America's retained expert Dr. Barbara Murphy (Docs. 125, 128) is **GRANTED in part and DENIED in part**. The Court further **RESERVES RULING** as to objections made under Rule 403.

Dr. Murphy is barred from testifying at trial that had Plaintiff Lisa Vandervelden followed up with an ENT in June as directed, she may possibly have avoided a total glossectomy. She is further barred from testifying that a work-up in June or July 2017 would possibly have given Vandervelden a better chance for a better outcome.

The *Daubert* motions and motion *in limine* filed by SLU and the USA to exclude the testimony of Vandervelden's retained expert Dr. Krzystof Misiukiewicz (Docs. 126, 129, 133) are **DENIED in part**. The Court **RESERVES RULING** on objections made under Rule 403 as to Dr. Misiukiewicz's testimony regarding the supervision of residents.

Because SLU's *Daubert* motions are denied in part, its Motion for Summary Judgment based on the lack of causation evidence (Doc. 130) is also **DENIED**.

Finally, the Court **DENIES without prejudice** SLU's Motion *in Limine* No. 1 (Doc. 127) and the Motion *in Limine* filed by the USA (Doc. 134). In accordance with the undersigned's Case Management Procedures, a deadline for these routine motions *in limine* will be set at the Final Pretrial Conference. The Court will address SLU's Fourth and Fifth Motions *in Limine* (Docs. 168, 172) by separate order.

**IT IS SO ORDERED.**

DATED:  March 7, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**