## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LISA VANDERVELDEN,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 3:18-CV-1333-NJR** |
| **SAINT LOUIS UNIVERSITY and** **UNITED STATES OF AMERICA,** | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, Chief Judge:**

Pending before the Court are Motion *in Limine* No. 4 and Motion *in Limine* No. 5 filed by Defendant Saint Louis University (SLU) (Docs. 168, 172). The United States of America has joined in Motion *in Limine* No. 5. (Docs. 174, 175). Plaintiff Lisa Vandervelden filed responses in opposition. (Docs. 169, 173).

### LEGAL STANDARD

A district court may rule on motions *in limine* as part of its inherent authority to manage trials. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). Motions *in limine* are intended "to avoid the delay and occasional prejudice caused by objections and offers of proof at trial." *Wilson v. Williams*, 182 F.3d 562, 566 (7th Cir. 1999). They also prevent the jury from hearing evidence that is "clearly inadmissible on all possible grounds." *Anglin v. Sears, Roebuck & Co.*, 139 F.Supp.2d 914, 917 (N.D. Ill. 2001).

In some instances, however, it is best to defer rulings until trial, where decisions can be better informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole. *Id.* "A pre-trial ruling denying a motion *in limine* does

not automatically mean that all evidence contested in the motion will be admitted at trial."
*Delgado v. Mak*, No. 06 CV 3757, 2008 WL 4367458, at *1 (N.D. Ill. Mar. 31, 2008). Because motion *in limine* rulings are preliminary, a federal district court reserves the power to make evidentiary rulings as a trial progresses and remains free to revisit or alter its earlier disposition of a motion *in limine. See Perry v. City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013).

DISCUSSION

I.      **Motion *in Limine* No. 4**

In Motion *in Limine* No. 4 (Doc. 168), SLU asks the Court to bar Vandervelden's hired expert Dr. Charles Kodner, or any other witness, from giving the following opinion:

> Based on review of these materials I believe the standard of care required that at the time of the June 30th visit the patient should have been scheduled to see an ENT for a consultation and biopsy within days of that visit and in no event longer than 10 days following that visit. In fact, the manner in which the referral was accomplished on July 31st should have been how it was accomplished on June 30th.

SLU argues these opinions are untimely when they were not disclosed until November 22, 2021. Vandervelden's deadline for disclosing expert witnesses was August 14, 2020, and her deadline for disclosing rebuttal witnesses was May 24, 2021. SLU notes that Dr. Kodner had the information required to timely disclose this opinion within his first report and argues that late disclosure is not permitted simply because "another idea" pops into the mind of an expert.

In response, Vandervelden contends that Dr. Kodner based his supplemental opinion on his review of various disclosures, addendums, and deposition transcripts that he had not reviewed at the time of his deposition or at the time of his initial disclosure. Vandervelden asserts Dr. Kodner had a duty to supplement his disclosure, and he timely did so by

disclosing the opinion prior to the deadline for Rule 26(a)(3) pretrial disclosures.

Under Rule 26(a)(2), a party must disclose by the court-ordered deadline a written report of a retained expert that includes "a complete statement of all opinions the witness will express and the basis and reasons for them." FED. R. CIV. P. 26(a)(2)(B)(i), (D). Rule 26(a)(2) further requires that parties disclose rebuttal reports—that is, "evidence [that] is intended solely to contradict or rebut evidence on the same subject matter identified by another" expert—by the court-ordered deadline or, or if no such time is set, 30 days after the other expert's disclosure. FED. R. CIV. P. 26(a)(2)(D)(ii).

Rule 26 also contemplates supplemental expert filings, allowing an expert to supplement his or her disclosure if the expert "learns that in some material respect the disclosure . . . is incomplete or incorrect." FED. R. CIV. P. 26(e)(1)(A), (2); *Callpod, Inc. v. GN Netcom, Inc.*, 703 F. Supp. 2d 815, 823 (N.D. Ill. 2010) ("Supplemental expert reports are permitted if they are based upon information discovered after the initial disclosure or upon the realization that the original disclosure was incorrect or incomplete.").

If a party does not timely file its reports, the district court may exclude the party's expert from testifying at trial on the matters the party was required to disclose. *NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 785–86 (7th Cir. 2000) (citing FED. R. CIV. P. 37(c)(1)). "The sanction of exclusion is 'automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless.'" *Id.* (quoting *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996)). In deciding whether a party's failure was justified or harmless, courts consider: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the

evidence at an earlier date." *Karum Holdings LLC v. Lowe's Cos., Inc.*, No. 15 C 380, 2017 WL 5593318, at *3 (N.D. Ill. Nov. 21, 2017) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

Ultimately, "[t]he determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *King v. Ford Motor Co.*, 872 F.3d 833, 838 (7th Cir. 2017). "A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose." *Caterpillar, Inc.*, 324 F.3d at 857.

Here, Vandervelden's deadline for disclosing expert witnesses was August 14, 2020, and discovery closed on May 13, 2021. Dr. Kodner's supplemental disclosure, provided on November 22, 2021, states that after he gave his deposition and prepared his original report, he reviewed Vandervelden's deposition, which was taken September 1, 2020, as well as the depositions of a number of fact and expert witnesses. While his review of the expert witness depositions is irrelevant since he was not designated as a rebuttal expert, Vandervelden's deposition testimony, as well as that of Dr. Nash and Dr. Guthrie, constitute information discovered after Dr. Kodner's initial disclosure. Dr. Kodner was required to supplement his report with any additions "by the time [Plaintiff's] pretrial disclosures under Rule 26(a)(3)" were due. FED. R. CIV. P. 26(e)(2). Pretrial disclosures under Rule 26(a)(3) are due at least 30 days before trial. At the time Dr. Kodner served his supplement in November 2021, trial was presumptively set for July 2022.[1] Thus, the Court finds that Dr. Kodner's disclosure was not untimely.

---

[1] It is now set for August 2022.

Even if the disclosure was not timely, SLU is not prejudiced and can hardly claim surprise by an opinion offered nine months before the presumptive trial month. SLU has ample time to prepare its own witnesses to rebut Dr. Kodner's opinion, and there is no evidence of bad faith on Vandervelden's part in failing to disclose the opinion sooner. *See Caterpillar, Inc.*, 324 F.3d at 857. Accordingly, the motion is denied on this basis.

SLU next contends there is no expert evidence demonstrating that the failure to schedule Vandervelden to see an ENT within 10 days of her June 30, 2017 doctor's visit caused her alleged injury or would have made a difference in her outcome. Dr. Krzysztof Misuikiewicz, Vandervelden's expert, offered a causation opinion assuming a February 2017 diagnosis, while Dr. Barbara Murphy, the USA's expert, opined that, had Vandervelden followed up with an ENT in June 2017, she "may possibly" have avoided a total glossectomy. SLU argues Dr. Murphy's opinion does not supply the necessary causation when she admitted her opinion about a better outcome was not made to a reasonable degree of medical certainty, she is not a surgeon, and she admitted she did not know if a diagnosis in June would have made a difference in Vandervelden's outcome.

In response, Vandervelden argues that Dr. Misiukiewicz opined that because of the *delay in diagnosis*, Vandervelden has a more dire prognosis and survival estimate, and because of the *delay in diagnosis*, she underwent otherwise unnecessary treatment that caused long-term damage. Additionally, Dr. Murphy testified that the earlier the diagnosis, the better the outcome. Thus, the evidence in the case supports Dr. Kodner's supplemental opinion that the failure to ensure a consultation and biopsy following Vandervelden's June 30, 2017 appointment was a breach of the standard of care.

"Proximate cause in a medical malpractice case must be established by expert

testimony to a reasonable degree of medical certainty, and the causal connection must not be contingent, speculative, or merely possible." *Yong Juan Zhao on behalf of Zhao v. United States*, 411 F. Supp. 3d 413, 434 (S.D. Ill. 2019), *aff'd sub nom. Zhao v. United States*, 963 F.3d 692 (7th Cir. 2020) (quoting *Morisch v. United States*, 653 F.3d 522, 531 (7th Cir. 2011)). Here, the expert testimony provided by Dr. Misiukiewicz and Dr. Murphy both establish that an earlier biopsy and diagnosis of oral carcinoma would have given Vandervelden a better chance at a better outcome. Accordingly, the Court finds Dr. Kodner's supplemental opinion is admissible.

## II.    **Motion** *in Limine* **No. 5**

With Motion *in Limine* No. 5, SLU and the USA move to bar any reference to: (1) portions of the residency file of Dr. Stacy Jefferson; (2) the entire deposition testimony of Dr. Cole Taylor, a SLU physician who supervised Dr. Jefferson; and (3) performance scoring and evaluations of then-residents Dr. Imran Khan and Dr. Stacy Jefferson contained in their respective residency files. (Doc. 172). In particular, Defendants reference two emails in Dr. Jefferson's file written by her supervisor, Dr. Taylor. The emails provided negative feedback on Dr. Jefferson's subpar performance on January 12, 2017, related to patients presenting with, among other things, pneumonia, bronchitis, sinusitis, plantar warts, a suspected kidney stone, and forearm pain. (Doc. 171-1). Dr. Taylor stated that Dr. Jefferson's "lack of knowledge is what I would expect for a low-level intern, not a third-year resident in the second half of the year," though he also acknowledged that Dr. Jefferson was "not feeling well" that day and was thankful for the constructive feedback. (Docs. 172-1, 172-2). Defendants argue the only purpose of using this evidence is to imply Dr. Jefferson has a lack of knowledge or to show her propensity to underperform, *i.e.*, "once a negligent doctor,

always a negligent doctor." Defendants further assert the prejudicial effect of this evidence vastly outweighs any probative value.

Vandervelden avers such evidence should be admissible, not to prove propensity, but to show that the USA's physicians negligently failed supervise and communicate with SLU's resident medical doctors, including Dr. Khan and Dr. Jefferson. Vandervelden asserts that evidence of Dr. Kahn and Dr. Jefferson's performance in the medical residency program is directly relevant to whether the supervisors failed to adequately assess or monitor the medical residents' knowledge and experience.

Rule 404(b) prohibits the use of evidence of a crime, wrong, or other act to prove a person's character in order to show that, on a particular occasion, the person acted in accordance with that character. FED. R. EVID. 404(b)(1). The evidence may be admissible for another purpose, however, such as to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. FED. R. EVID. 404(b)(2).

While "[t]he rule is straightforward enough," the Seventh Circuit has observed that "confusion arises because admissibility is keyed to the purpose for which the evidence is offered, and other-act evidence is usually capable of being used for multiple purposes, one of which is propensity." *United States v. Gomez*, 763 F.3d 845, 855 (7th Cir. 2014). And if other bad acts can be admitted simply because they can be connected to the defendant's knowledge, intent, identity, etc., "then the bar against propensity evidence would be virtually meaningless." *Id.* Thus, "it's not enough for the proponent of the other-act evidence simply to point to a purpose in the 'permitted' list and assert that the other-act evidence is relevant to it." *Id.* at 856. Instead, the use of other-act evidence is permitted "only when its admission is supported by some propensity-free chain of reasoning." *Id.* That is, the evidence must be

excluded when "its relevance to 'another purpose' is established only through the forbidden propensity inference." *Id.*

To determine whether the other-act evidence is admissible under Rule 404(b), the court must evaluate *how* the evidence makes a particular fact of consequence more or less probable. *Id.* Even if the proponent of the evidence "can make this initial showing, the district court must in every case assess whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice and may exclude the evidence under Rule 403 if the risk is too great." *Id.* at 860. "The court's Rule 403 balancing should take account of the extent to which the non-propensity fact for which the evidence is offered actually is at issue in the case." *Id.*

Here, the Court finds there is no propensity-free chain of reasoning that would support the admission of Dr. Taylor's emails, Dr. Taylor's deposition testimony regarding Dr. Jefferson's subpar performance on January 12, 2017, or Drs. Kahn and Jefferson's performance scores and evaluations. While Vandervelden claims the evidence of Dr. Jefferson's subpar performance on January 12, 2017, is relevant to the question of whether the USA's physicians failed to adequately monitor the knowledge and experience of SLU's residents, that reasoning requires an inference that because Dr. Jefferson had one bad day (when she was not feeling well), she must have had another bad day while treating Vandervelden. In other words, the evidence makes it more probable that the USA's doctors negligently failed to supervise only if one first infers that Dr. Jefferson had the propensity for providing subpar care on other occasions. Such an inference is impermissible under Rule 404(b) because it suggests Dr. Jefferson had the propensity to be a negligent doctor. Likewise, the Court fails to see how the SLU residents' declining training examination scores would

make it more or less probable that the USA's physicians negligently supervised the residents' treatment of Vandervelden without first inferring that the residents acted in accordance with their character for underperforming on examinations.

Because the contested evidence is prohibited by Rule 404(b), the Court grants SLU's Motion in Limine No. 5 (Doc. 172).

### CONCLUSION

For these reasons, Motion *in Limine* No. 4 filed by Saint Louis University (Doc. 168) is **DENIED**. Motion in *Limine* No. 5 filed by Saint Louis University and joined by the United States of America is **GRANTED**.

**IT IS SO ORDERED.**

**DATED:   May 12, 2022**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**